Mr. Justice James
delivered the opinion of the court.
An alternative writ of mandamus, returnable in this court in general term, has been granted upon the petition of James S. Edwards and five other persons. The petition sets forth that the relators and the respondents are policy holders and members of “ The Mutual Eire Insurance Company of the District of Columbia,” a corporation established in this District under an act of Congress approved January 10, 1855 ; that under its charter and by-laws, both of which are made part of this petition, the annual meetings of the company are assigned to be held on the third Monday in January in each year, and that the election of its board of managers is required to be held at such annual meetings ; that at and before the third Monday of January, 1879, which was the 20th day of that month, the respondants, with two others who are not made parties to the writ, constituted the board of managers ; that on the 10th day of January, 1879, the said board of managers caused a notice to be published in the Evening Star newspaper, published in the city of Washington, to the effect that the annual meeting ivould be held on the 20th day of the same month ; that, for certain reasons set forth, no election for a new board of managers was attempted on the last-named day, and the annual meeting wras adjourned to the 17th day of February, 1879, when it was reconvened in adjourned session ; that, on so reconvening, the meeting amended the by-laws so as to provide that on the day of election the polls should be kept open from 9 o’clock in the morning to 9 o’clock in the evening, and thereupon adjourned to the 24th day of February, 1879 ; that, being duly reconvened on the last-mentioned day, the meeting proceeded, in accordance with the amendment of the by-laws as to the hours for voting, to vote for a board of managers for the ensuing year, all of the respondents participating in and voting at said election ; that three of *167 the relators, Edwards, Dealing and Cochran, with Samuel Norment, who is not made a party to this proceeding, received respectively a majority of all the votes cast; whereupon the meeting was adjourned to March 3, 1879, and was then again adjourned to the 6th of the same month, and that on the last-mentioned day, the relators, Schneider, Polkinhorn and Clagett, received respectively a majority of all the votes cast. The petition further sets forth that the said elections were conducted fairly and in accordance with a list of policy holders furnished by the respondents ; that the relators—Norment declining to act with them—organized themselves as a board of managers, and demanded of the respondent possession of the office and effects of the company, and that the relators should be installed in office as the board of managers ; but that respondents refused to comply with these demands, and still continue to retain possession of said office and effects, and to act as the board of managers, alleging that the relators were not elected as their successors, for the reason that notice of the annual meeting had not been given as required by the act of incorporation.
The alternative writ, which issued simultaneously with the filing of this petition, is addressed to the respondents without any addition or description of their official character, while it commands them to do an act which they can do only in an official capacity ; and the petition states that they had been duly elected into the place and office of managers of the Mutual Eire Insurance Company, without stating when or for what year. It concludes, however, with the words “ as by their complaint hath been stated to the court here.”
The respondents now move to quash the writ, for reasons assigned. These objections are substantially, that these relators cannot join in one writ, even if their titles be clear ; that they cannot be induced by the writ of mandamus into an office which is occupied under color or title, and, finally, that the writ fails to show that they have any title to the office in question, while the petition shows affirmatively *168 that their title is in dispute, and indeed that they have no title at all.
Our attention has necessarily been directed first to the question, whether the relators have a right to join in one writ. It would be convenient, perhaps, if the class of cases in which several prosecutors may join in proceedings for mandamus could be enlarged, but since this writ has become an action between private parties, the rules applicable to joinder in other common law actions have, on the whole, been consistently applied to it. In 1730 it was held by the King’s Bench, in The King and the Bailiffs of Ipswich, 1 Barnardistun, 407, that two bailiff's might join in one writ because the office of bailiffs of that corporation was but one office; but the same court held in The King vs. The City of Chester, 5 Madern Rep., 11, that nine common councilmen could not join in one writ, for the reason their offices were several. It is certainly the general rule that interests which are clearly several cannot be prosecuted jointly in this com mon-law proceeding •, aud it would seem that, although the officers of these relators are similar, and although each of them may, for special reasons, feel deeply concerned that all the others should be admitted along with himself, his office constitutes in contemplation of law, a several interest. Whatever emoluments are incident to the office enure to each separately. It would seem, therefore, to be a safe rule that they should not be joined.
It is not deemed proper, however, that the present controversy should be disposed of on this technical ground. We, shall, therefore, proceed to consider whether the relators appear to have title to the offices to which they seek to be admitted.
The motion to quash objects, not only that the alternative writ fails to show affirmatively the facts which make out a good title, but that the petition which may be referred to at least as an affidavit, discloses facts which show that they have not a good title. The ground of the objection thus disclosed is, that the meetings at which the relators claim to have been elected had no legal capacity to enter upon *169 such elections. Whether those meetings had such capacity depends upon the provisions of the act of incorporation.
The 12th section of the charter provides for an annual meeting of the company, the time and place of which shall be determined by the managers, and for special meetings, which shall be called by the president of the company whenever he is requested to do so by twenty of its members. It then provides that the election of managers shall be held at the annual meetings, and that, two weeks previous to the annual meeting, the managers shall publish in a newspaper in Washington certain statements relating to the business of the company ; and then adds that “ of said meetings notice shall be given in two newspapers published in the city of Washington, at least two weeks previous thereto.” This last clause, following the mention of both the annual and special meetings, and without terms of discrimination between the two cases, necessarily applies to both. It was claimed however, in the argument on the part of the relators, that, although this provision for notice is mandatory in reference to the special meetings, it is only directory in reference to the annual meetings. But we conceive that, inasmuch as it applies in terms to both kinds of meetings, it must receive a uniform interpretation in reference to both, unless the act of incorporation contains some other provision whose operation indicates that it was intended by the legislature to be only directory in reference to the annual meetings.
It is claimed by the relators that the first by-law, which is authorized by the charter, is a provision of this kind. The argument is, that inasmuch as corporators are charged with knowledge of their own by-laws, and this by-law1 fixes the time of the annual meetings, the members of this company had, and w'ere intended to have,' by that means, a constant notice of their annual meetings ; and that, therefore, the clause in question must have intended the special notice of the same meetings to be auxiliary ; in other words, that the legislature must be understood to have added this pro *170 vision as a direction, and not as a condition upon which the holding of the meeting depended.
If this argument' applies the true test for the purpose of determining whether the provision for special notice is directory, that test is fatal in the present case. Had the act of incorporation contemplated that information of all the necessary facts should be given by the by-laws, it might have been said that the provision that it should be given also by publication for a certain time in the newspapers was only directory. But we conceive that the charter did not contemplate that all of the facts which are to be stated in the special notice should be contained in the by-laws. It could not have been intended that the place of meeting should be made the subject of a by-law ; for the by-laws could only be amended by a slow process, and the place of meetiug was, in its nature, a matter of changing convenience, to be determined on according to exigencies which would not permit a reference to the corporators. It was not contemplated, then, that the same information which the special notice should contain, was to be given by the very law of the corporation. It follows that the legislature relied wholly, therefore, upon the special notice, as the necessary means of informing the corporators, and that a provision which requires the use of this means is mandatory. It may be added that as a matter of fact, the by-laws of this company do not prescribe the place as well as the time of the annual meeting, and do not pretend, therefore, to serve the purpose of the special notice, by giving notice of all the facts which should be stated in the latter.
"We hold, then, that the publication of the special notice in two newspapers for a period of two weeks is a condition upon which the validity of the annual meetings of this corporation depends. It appears that notice of meeting of January 20, 1879, was published for only ten days. That meeting, therefore, had no legal capacity to enter upon an election of managers, and the subsequent meetings, held upon adjournments from the original meeting, could not acquire capacity by those adjournments. If the corporators *171 did not have proper notice of the original meeting, they did not have proper notice of its continuations. It appears, then, that the relators have no title to the offices which they seek by this writ, and the writ must be quashed.